**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

UNITED STATES OF AMERICA

v.                                                    CRIMINAL ACTION NO. 3:14-00045-1

DEMETRIUS D. THOMAS

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Mr. Thomas' Motion for Reconsideration of Compassionate

Release. ECF No. 132. In his Motion, he argues that COVID-19 testing is not available at F.M.C.

Lexington and that those inmates who do test positive for COVID-19 are placed in solitary

confinement. He argues that his age, asthma, high blood pressure, and weight put him at a high risk

of serious illness or death if he becomes sick with COVID-19.

He also makes the argument that his conviction for Conspiracy to Possess with Intent to

Deliver a Controlled Substance would no longer count towards the career offender enhancement

under the United States Sentencing Guidelines.

Mr. Thomas further makes generalized arguments about corruption in the Bureau of

Prisons and also asserts that he is needed at home due to the passing of his child.

For the following reasons, the Court **DENIES** this Motion. ECF No. 132.

**BACKGROUND**

Mr. Thomas was sentenced on August 4, 2014, to 120 months incarceration for the

Distribution of a Quantity of Heroin in violation of 21 U.S.C. § 841(a)(1). ECF No. 51. The

Presentence Report indicates that Mr. Thomas received a Chapter Four Enhancement under the

Sentencing Guidelines because he was over 18 years old and had at least two prior felony,

controlled substance convictions. While his base offense level was 16, and he received a two-level

enhancement for the possession of a firearm, the Chapter Four Enhancement increased his offense

level to 32. ECF No. 58 at 6. These prior convictions were Conspiracy to Possess with Intent to

Deliver a Controlled Substance and Distribution of Cocaine Base.

## DISCUSSION

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat.

5194. As part of the Act, Congress amended Section 3582 and enabled courts to reduce a term of

imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. §

3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. However,

before defendants may request such a reduction, defendants must ask the BOP to do so on their

behalf. See 18 U.S.C. § 3582(c)(1)(A). If the BOP denies the defendant's request or does not

respond within 30 days, the defendant may file a motion before the court. *Id.*

If an inmate satisfies this administrative exhaustion requirement, courts may reduce the

inmate's sentence if there are (1) "extraordinary and compelling reasons," (2) the defendant is "no

longer a danger to the safety of any other person or to the community," and (3) release is consistent

with the factors identified under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c); U.S.S.G § 1B1.13

(2018). During the COVID-19 pandemic, courts have recognized that compassionate release is

appropriate where an inmate has shown both a particularized susceptibility to the virus and a

particularized risk that she will contract the virus at his facility. *See, e.g.*, *United States v. Feiling*,

453 F. Supp. 3d 832, 841 (E.D. Va. 2020); *United States v. Eberbaugh*, No. CR 2:18-00222-02,

2020 WL 4804951, at *3 (S.D.W. Va. Aug. 18, 2020) (considering "the age of the prisoner, the

severity and documented history of the defendant's health conditions, and the proliferation and

status of infections in the prison facility" to determine if compassionate release is appropriate).

Mr. Thomas raised several arguments to support his Motion for Reconsideration of Compassionate Release. The Court will address them below.

1. COVID-19

Mr. Thomas cites generalized COVID-19 concerns to support his Motion. He argued that there is not enough testing available at F.M.C. Lexington where he is incarcerated. He further asserts that those who do get ill with the disease are placed in solitary confinement, and thus, inmates are hesitant to come forward when they feel unwell. Mr. Thomas also argues that his age and health issues, including asthma, high blood pressure, and his weight, place him at a high risk of serious illness if he catches the disease.

As noted in the Court's previous opinion on Mr. Thomas' Emergency Motion for Compassionate Release, his medical conditions are not sufficiently serious to justify release. ECF No. 131, at 2. Additionally, F.M.C. Lexington is currently operating under Modified Operational Level One, indicating minimal modifications. *COVID-19 Coronavirus*, www.bop.gov/coronavirus/ (last visited Apr. 6, 2022). This operational level is based on the facility's medical isolation rate, combined percentage of staff and inmate completed vaccination series, and the county transmission rates. *Id.* Further, the facility has successfully vaccinated 1,283 inmates and 454 staff. *Id.* Currently, there are no inmates who have tested positive for COVID-19 at the facility. *Id.* It appears to the Court that this facility is satisfactorily managing the care of inmates. Thus, COVID-19 concerns do not constitute "extraordinary and compelling reasons for release."

2. Corruption in the BOP

Mr. Thomas cites generalized claims of corruption throughout the BOP as a reason to grant his Motion. However, Mr. Thomas makes no such claims with specificity as to his experience at

F.M.C. Lexington, and therefore, the Court finds that such claims cannot constitute "extraordinary and compelling reasons for release."

3.   Family Needs

Mr. Thomas explains that he has lost a child who was battling an illness and that he is needed at home. While this Court is sympathetic to Mr. Thomas' situation, he has not articulated compelling reasons as to why he is needed at home, and so the Court cannot find "extraordinary and compelling reasons for release."

4.   Chapter Four Enhancement

Lastly, Mr. Thomas argues that, under *United States v. Norman*, his offense of Conspiracy to Possess With Intent to Deliver a Controlled Substance would no longer count as a predicate offense under U.S.S.G. § 4B1.2 as a "controlled substance offense," and thus, if he was sentenced today, this enhancement would not have applied to his sentence. 935 F.3d 232, 237 (4th Cir. 2019).

In *United States v. Norman*, the Fourth Circuit considered a similar issue to the one before the Court. Norman received an enhancement to his offense level under U.S.S.G. § 2K2.1(a)(4) because he had prior convictions for controlled substance offenses, one of which was for conspiring to possess cocaine and cocaine base with intent to distribute, and the guidelines state that a controlled substance offense includes offenses of conspiring to commit such offenses. U.S.S.G. § 4B1.2(b).

To determine whether a conviction qualifies as a predicate offense under the Guidelines, the court takes a two-step approach: 1) establishing a "generic" definition of the predicate offense; and 2) determining "whether the conviction at issue constitutes a conviction of that generic offense." *United States v. Norman*, 935 F.3d 232, 237 (4th Cir. 2019). In order to make the second determination, the elements of the generic offense are compared to the defendant's offense of

conviction—if such "conviction criminalizes conduct broader than that encompassed by the generic offense, the conviction does not categorically qualify under the Guidelines." *Id.*

The *Norman* court discussed how, because the Guidelines do not define conspiracy as it appears in § 4B1.2, it is defined by the "generic, contemporary meaning" of the crime. *Id.* (citing to *Taylor v. United States*, 495 U.S. 575, 598 (1990)). The Fourth Circuit has held that the generic definition of "conspiracy" includes an overt act as an element, and that this requirement is incorporated into § 4B1.2. *Id.* at 238. Norman was convicted of conspiracy under 21 U.S.C. § 846, which does not require an overt act—thus, his offense conduct criminalized broader conduct than that in the generic offense. *Id.* The Fourth Circuit held that Norman's conviction under § 846 could not support the sentencing enhancement. *Id.; see United States v. Landrum*, 2021 WL 5055844 *1 (4th Cir. 2021) (finding that, because a drug conspiracy offense under 21 U.S.C. § 846 no longer qualifies as a controlled substance offense, Landrum no longer qualified as a career offender).

A Chapter Four enhancement applied to Mr. Thomas' sentence because of his convictions for Conspiracy to Possess With Intent to Deliver a Controlled Substance and Distribution of Cocaine Base. Under U.S.S.G. § 4B1.2, a "controlled substance offense" means any offense under a federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense. The Commentary further defines "controlled substance offense" to include the offenses of aiding and abetting, conspiring, and attempting to commit such offense. *Commentary*, U.S.S.G. § 4B1.2.

Here, Mr. Thomas argues that his conviction of Conspiracy to Possess With Intent to Deliver a Controlled Substance, in violation of W. Va. Code § 61-10-31, would no longer be

considered a "controlled substance offense" under the Guidelines. His conviction for this crime was in the Cabell County Circuit Court. The West Virginia conspiracy statute provides:

> It shall be unlawful for two or more persons to conspire (1) to commit any offense against the state or (2) to defraud the State, the state or any county board of education, or any county or municipality of the State, if, in either case, one or more of such persons does any act to effect the object of the conspiracy.

W. VA. CODE § 61-10-31. This statute explicitly requires that someone in the conspiracy take a specific "act" to further the conspiracy. And, the West Virginia Supreme Court has reiterated the requirement that the state allege an overt act made in furtherance of the conspiracy being alleged. *State ex rel. Taylor v. Janes*, 693 S.E.2d 82, 91 (W. Va. 2010); *State v. Less*, 294 S.E.2d 62, 67 (W. Va. 1981) ("In order for the State to prove conspiracy under W. Va. Code § 61-10-31(1), it must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy."). This is contrary to the federal conspiracy statute, which does not require an overt act.

Because the West Virginia statute requires an overt act, just as the Fourth Circuit decided was incorporated into § 4B1.2, the statute Mr. Thomas was convicted under does not criminalize broader conduct than is required for the sentencing enhancement. Thus, this conviction should support the enhancement.

## CONCLUSION

For the foregoing reasons, Mr. Thomas' Motion for Reconsideration of Compassionate Release is **DENIED**. ECF No. 132.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and the Defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

-7-

ENTER:      April 11, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE